**Russell BAER, Sr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. C80–330A.

United States District Court, N. D. Ohio, E. D.

Dec. 17, 1980.

⊂⇒9

Paul A. Tscholl, John A. Tscholl, Canton, Ohio, for plaintiff.

Carolyn Watts Allen, Asst. U. S. Atty., Cleveland, Ohio, James P. Klapps, Joan M. Bernott, U. S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is a suit instituted pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, wherein the plaintiff, Russell Baer, Sr. (Baer), seeks tort damages from the defendant, United States of America, for personal injuries and property damage sustained as a result of his agricultural use of the chemical herbicide "Esteron". The complaint charges negligence on the part of the Environmental Protection Agency (EPA) in inadequately regulating the labeling of that herbicide. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1346(b).

The matter is presently before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., wherein it is asserted *inter alia* that the complaint fails to state a claim upon which relief may be granted for the reason that defendant does not, as a matter of law, owe an actionable tort duty to plaintiff under the circumstances alleged in the complaint. Plaintiff has responded in opposition.

The facts necessary to a resolution of the instant controversy are briefly stated. Pursuant to the Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. § 136 *et seq.*, the EPA is empowered to regulate the marketing of pesticides, herbicides, fungicides, insecticides, and any other chemical compound used as a means for regulating animal, insect or plant life which may produce adverse environmental consequences. Section 3(a) of the Act, 7 U.S.C. § 136a(a), prohibits the sale of "any pesticide which is not registered with the Administrator [of the EPA]." Registration may be obtained in accordance with specified procedures, *see* 7 U.S.C. § 136a(c), and provided:

The Administrator ... determines that, when considered with any restrictions imposed under subsection (d) of this section (classification requirements)—

(A) [The] composition [of the pesticide] is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

The labeling provisions comprise only a small part of the regulatory scheme. Nonetheless, a pesticide is deemed "misbranded" if *inter alia* "the labeling accompanying it does not contain directions for use which ... if complied with ... are adequate to protect health and the environment," 7 U.S.C. § 136(q)(1)(F), or "the label does not

contain a warning or caution statement which may be necessary, and if complied with, . . . is adequate to protect health and the environment." 7 U.S.C. § 136(q)(1)(G). Regulations promulgated pursuant to the Act specify that "where a hazard exists to humans or domestic animals, precautionary statements are required indicating the particular hazard, the route(s) of exposure and the precautions to be taken to avoid accident, injury or damage." 40 C.F.R. § 162.-10(f)(2)(i); see also 40 C.F.R. § 162.-10(h)(1)(i) et seq.

The Complaint essentially charges a violation of the aforementioned labeling requirements in that, although "[d]efendant was aware of the extremely dangerous characteristics of the contents of the herbicide" see Complaint, ¶ IV, "[d]efendant failed to require an adequate and proper warning on the registered label it approved", id. ¶ V and, as a result of "[d]efendant's negligence in labeling the can of Esteron, plaintiff . . . sustained damages . . . to his person and his property." Id. ¶ VI.

Section 1346(b) of Title 28, United States Code, provides in pertinent part:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . injury of loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

■ A number of courts have recently addressed questions regarding the extent of governmental liability pursuant to the aforesaid provision under circumstances where, as here, a federal agency has allegedly violated its own regulations during the course of exercising regulatory functions such as inspection, certification or reg-

istration of products intended to be marketed to the general public. In this regard, the Court observes preliminarily that the Federal Tort Claims Act constitutes only a limited waiver of sovereign immunity. As explained by Mr. Justice Reed in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953):

> The legislative history indicates that while Congress desired to waive the Government's immunity from actions for injuries to person and property occasioned by the tortious conduct of its agents acting within their scope of business, it was not contemplated that the Government should be subject to liability arising from acts of a governmental nature or function.
>
> \*   \*   \*   \*   \*   \*
>
> Uppermost in the collective mind of Congress were the ordinary common-law torts. Of these, the example which is reiterated in the course of repeated proposals for submitting the United States to tort liability, is "negligence in the operation of vehicles."
>
> \*   \*   \*   \*   \*   \*
>
> One only need read § 2680 in its entirety to conclude that Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions.

*Id.* at 27–32, 73 S.Ct. at 963–966. Thus, it is well-settled that the Federal Tort Claims Act created no substantive rights, "but merely established a [procedural] remedy for existing 'ordinary common-law torts'" committed by government employees. *Mercer v. United States*, 460 F.Supp. 329, 330 (S.D.Ohio 1978); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Certain Underwriters at Lloyd's v. United States*, 511 F.2d 159, 161 (5th Cir. 1975); *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210 (E.D.N.Y.1979).

■ It follows then that "the Act was not designed to redress breaches of federal statutory duties," *United Scottish Insur-*

ance Co. v. United States, 614 F.2d 188, 192 (9th Cir. 1979); Baker v. F & F Investment Co., 489 F.2d 829, 835 (7th Cir. 1973); Devlin Lumber & Supply Corp. v. United States, 488 F.2d 88, 89 (4th Cir. 1973); Blessing v. United States, 447 F.Supp. 1160, 1186 n.37 (E.D.Pa.1978), and the weight of existing legal precedent now holds that "federal regulatory enforcement activities do not give rise to an actionable tort duty owed by the United States." Carroll v. United States, 488 F.Supp. 757, 759 (D.Idaho 1980); First State Bank of Hudson County v. United States, 599 F.2d 558 (3rd Cir. 1979), cert. denied, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); Harmsen v. Smith, 586 F.2d 156 (9th Cir. 1978); Mercer v. United States, 460 F.Supp. 329 (S.D. Ohio 1978); Mosley v. United States, 456 F.Supp. 671 (E.D.Tenn.1978); In re Franklin National Bank Securities Litigation, 445 F.Supp. 723 (E.D.N.Y.1978); Davis v. United States, 395 F.Supp. 793 (D.Neb.1975), aff'd per curiam, 536 F.2d 758 (8th Cir. 1976). In United Scottish Insurance Co. v. United States, supra, the Ninth Circuit Court of Appeals explored the policy considerations underlying application of these principles. At 614 F.2d 193, the Court posited:

> An important policy underlies these holdings that a federal statutory duty does not automatically give rise to a duty of care to which a state's negligence per se doctrine would be applied. The government undertakes conduct in a variety of ways. Much of it, e. g., delivery persons driving trucks, is exactly what private corporations and persons ordinarily do. In other activities, however, such as inspecting privately owned aircraft, the government performs what may be called "good samaritan" functions. Although functions are carried out pursuant to statute or to regulations, they do not arise from a primary duty to provide the service in question. Thus, not only would there be no potential liability if government declined to provide such services at all, but the government does not purport to relieve other actors of the primary duty to see that the underlying activity is accomplished safely or consistently with some other important public policy. If such undertakings automatically created a cause of action for negligent performance, the government might be less inclined to assume such tasks in the future. (emphasis supplied)

Thus, a government employee's negligent violation of a duty imposed by federal statute or regulation is, standing alone, an insufficient basis on which to predicate liability under the Federal Tort Claims Act.

██ Nonetheless, those precedents which have addressed the issue have uniformly recognized that allegations of negligence in the enforcement of federal statutes or regulations are actionable under § 1346(b) where the conduct in question results in a violation of a corresponding tort duty imposed by applicable state law. 28 U.S.C. § 1346(b). For instance, in Gelley v. Astra Pharmaceutical Products, Inc., 610 F.2d 558 (8th Cir. 1979), plaintiff's decedent died allegedly as a result of an adverse reaction to a local anesthetic drug manufactured by the defendant. Plaintiff initiated suit against the United States pursuant to the Federal Tort Claims Act charging negligence on the part of the Food and Drug Administration in failing to require that the drug's labeling meet the requirements imposed by the regulations, and in permitting the drug to remain in interstate commerce in a "misbranded" condition. The district court dismissed the action, and the Court of Appeals affirmed. Speaking for a unanimous court, Circuit Judge Bright first noted that "under [the provisions of 28 U.S.C. §§ 1346(b) and 2684], governmental liability turns on whether a private person under like circumstances would incur liability to the claimant 'in accordance with the law of the place where the act or omission occurred'." Id. at 560. Finding Minnesota law controlling under applicable conflicts-of-law principles, the Court concluded:

> Minnesota recognizes no private cause of action for violations of governmental duties owed the public in general, similar to those duties performed by the FDA.

> \*     \*     \*     \*     \*     \*

Having considered the principles announced by the Minnesota Supreme Court . . . we reject [plaintiff's] contention that the complaint in this case states a claim cognizable under Minnesota law.

*Id.* at 561–562. *Accord: First State Bank of Hudson County v. United States, supra; United Scottish Insurance Co. v. United States, supra; Mercer v. United States, supra.*

■ Thus, whether the United States may be subjected to liability under the Federal Tort Claims Act on the basis of the allegations contained in plaintiff-Baer's complaint "depends on whether a cause of action exists under the law of Ohio against a private person under like circumstances." [1] *Mercer v. United States, supra,* 460 F.Supp. at 331.

■ Contrary to plaintiff's apparent assertion, however, those few authorities which have considered the question have consistently concluded that, under Ohio law, a state employee's negligent performance of duties imposed by statute or regulation may not form the basis of a private suit for damages. In *Shelton v. Industrial Commission,* 51 Ohio App.2d 125, 367 N.E.2d 51 (Franklin Cty. 1976), plaintiff was severely injured during the course of his employment as a result of the explosion of a boiler. Suit was initiated in the Ohio Court of Claims wherein plaintiff charged various state governmental agencies with negligence in the performance of certain statutory duties relating to the inspection of the plant where the accident occurred as well as the establishment and enforcement of safety standards for the protection of plant employees. In affirming the Court of Claims' dismissal of the action, the Franklin County Court of Appeals stated:

. . . it is [first] necessary to examine carefully the appropriate provisions of R.C. chapter 2743, where the state has partially waived its immunity from suit.

The pertinent section is R.C. 2743.02(A), which provides, as follows:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined in the court of claims created in this chapter *in accordance with the same rules of law applicable to suits between private parties.*"

\* \* \* \* \* \*

The crucial language to be interpreted is liability in accordance with the same rules of law applicable to suits between private parties. Private parties are not liable for injuries to another based on negligence unless they have breached a duty owed to that person. Since the requirement of a duty owed to plaintiff is one of the rules of law applicable to suits between private parties, it is also applicable to suits against the state. The Court of Claims Act does not create new duties, it only provides a remedy for existing duties where the state was previously immune from suit and a private party under similar circumstances would have been liable.

. . . there is no rule of law making a private party liable for a failure to perform statutory duties of inspection and enforcement of safety standards which were enacted to protect the health, safety and welfare of all of the citizens of Ohio . . .

Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions. They were not intended, nor should they be so construed, to create a duty toward any particular person. Likewise, their performance or nonperformance cannot be the basis of a tort action by an injured person.

*Id.* at 53–54. *Accord: City of Oregon v. Ferguson,* 57 Ohio App.2d 95, 385 N.E.2d

---

1. Inasmuch as plaintiff-Baer is a resident of the State of Ohio and the accident in question occurred in this jurisdiction, the Court concludes that Ohio law governs disposition of the within action. *See Gelley v. Astra Pharmaceutical*

Products, *supra* 610 F.2d at 561; *Semler v. Psychiatric Institute of Washington, D.C.,* 575 F.2d 922 (D.C.Cir.1978); *Gaither v. Myers,* 404 F.2d 216 (D.C.Cir.1968).

1084 (Franklin Cty. 1978); *Smith v. Wait*, 46 Ohio App.2d 281, 350 N.E.2d 431 (Franklin Cty. 1975).

A similar result obtained in *Mercer v. United States*, 460 F.Supp. 329 (S.D.Ohio 1978). In that case, plaintiff's decedent was killed in a mining accident which occurred during the course of his employment at the Blue Rock Quarry Mine. Suit was brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), charging that on several occasions, agents of the federal government inspected the Blue Rock Quarry Mine pursuant to 30 U.S.C. § 723(2), but that these inspections were negligently performed in that they failed to disclose, and the defendant failed to order correction of, certain violations of safety standards which proximately resulted in the decedent's death. In granting defendant's motion to dismiss, the Court, after reviewing several Ohio judicial pronouncements, concluded that "no liability has been imposed by Ohio law for the failure to perform a duty of inspection imposed by statute . . ." 460 F.Supp. at 329. Judge Duncan further opined:

> [T]he Court does not believe that liability attaches when, as here, the government . . . conduct[s] an inspection in accordance with a statute which seeks to cause mine operations to comply with safety standards . . .
>
> \*   \*   \*   \*   \*   \*
>
> A federal inspector assumes no responsibility to maintain compliance with safety standards upon which either the mine operators or their employees can rely. The responsibility remains with the operator and is not shifted to the inspector by the act of undertaking an inspection.

*Id.* at 331–332.

The foregoing authorities clearly establish that under Ohio law, no governmental liability attaches for the negligent performance of statutorily imposed duties. The fact that the United States, through the EPA, has undertaken the regulation of herbicide marketing, and has imposed labeling requirements which must be satisfied for potentially hazardous products does not relieve the herbicide manufacturer from the primary duty of ensuring that the product is safe and that it contains directions for use which if complied with are adequate to protect potential users.

Inasmuch as prevailing state law fails to recognize a duty flowing from the government to individuals under the circumstances related in Baer's complaint, the Court is constrained to conclude that no such liability may be imposed on the federal government pursuant to the Federal Tort Claims Act. Defendant's motion to dismiss is therefore granted and plaintiff's complaint is hereby dismissed in its entirety.

IT IS SO ORDERED.